James E. GLOCK and Agnes Glock, Plaintiffs and Respondents,

v.

Raymond H. HILLESTAD, Wanda M. Hillestad, R & H Construction Company, Inc., a foreign corporation, Robert Larson, Bismarck Lumber Company, Vantine Paint & Glass Company, a corporation, W. T. Jennings Lumber Company, Inc., a corporation, R–C Plumbing Company, a foreign corporation, Monson Contracting Company, Donald Henschel Roofing Company, Donald Henschel, Alex Hager, Lenus Ternes, Vernon Hanson, Fred J. Hessinger Plumbing & Heating, Hessinger Plumbing Company, Sampo Consolino, and all other persons unknown, claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants,

and

Anton Vogel, d/b/a Vogel Plumbing and Heating, Defendant and Appellant.

No. 7702.

Supreme Court of North Dakota.

Oct. 14, 1957.

Rehearing Denied Nov. 5, 1957.

Strutz, Jansonius & Fleck, Bismarck, for defendant and appellant.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

SCHNELLER, District Judge.

This action is one brought to quiet title to certain real estate situated in the City of Bismarck, North Dakota, and is in statutory form. The appellant interposed his original answer, in which he, in substance, made a general denial to the complaint of the plaintiff, admitted that he had an interest in the real property described in the complaint, and counterclaimed for certain work, labor and materials furnished by way of plumbing and heating installed in the premises described in the complaint, and asked for judgment for $1,659.79, and that the court impose a lien on the premises in that amount. The respondents replied denying that the appellant at their instance and request furnished labor and materials or that they entered into any contract with the defendant guaranteeing payments of any labor and material furnished by the appellant in and about the installation of plumbing and heating equipment. Immediately prior to trial appellant filed a mechanic's lien for labor for the sum of $386.75 against said premises, and thereupon served and filed an amended answer, in which the filing of said mechanic's lien for labor was alleged and claiming a lien on the premises by virtue thereof and asking for a foreclosure of said lien, and further alleging that the appellant had entered into a contract with R. & H. Construction Company, Inc., a foreign corporation, to furnish labor and material for the installa-

tion of plumbing and heating in the dwelling on the property described in plaintiff's complaint, and that pursuant to said contract appellant started the installation of the plumbing and heating but after installation of the plumbing water lines the defendant advised the respondent, James E. Glock, that no further materials or labor would be furnished until payment was made for the work completed or guaranteed for the work and labor to be furnished in the future, and that the respondent, James E. Glock, thereupon contracted with the appellant to furnish and complete such plumbing and heating for said premises and personally guaranteed the payment of the same. The court permitted the amended answer and counterclaim and gave permission to the respondents to interpose an amended reply thereto, which was done. The respondents in their amended reply deny any agreement to pay for or guarantee the payment for the work, materials and labor to be furnished, and allege that the appellant failed to give notification as required by statute that they were about to furnish materials for installation in the dwelling on said premises, and allege that the appellant had failed to perfect a lien and had failed to comply with the statutes relative thereto and that said lien is null and void. They further allege that supposed guarantee alleged to have been made by James E. Glock was not an original promise but if such was made it was a guarantee to answer for the debt, default and miscarriage of R. & H. Construction Company, Inc., and it was not in writing and was never entered into by the respondent, Agnes Glock.

The mechanic's lien for labor filed and set forth in the amended answer was received in evidence upon stipulation, and proof was introduced as to the correctness of the amount claimed for labor. No objection was made to the introduction of said lien in evidence, and the validity of the amount thereof was not questioned, nor was any showing made that the respondents had been prejudiced by the laches and delay in the filing of said lien. Respondents' sole objection to the mechanic's lien for labor is that it is in effect a mechanic's lien for material furnished, and that the statutory requirements preliminary to the filing of a mechanic's lien for materials had not been complied with. Respondents contended successfully before the trial court that in order to entitle one to a mechanic's lien for labor one must personally perform the actual labor.

Section 35-1203, NDRC 1943 provides as follows:

"Any person who performs or furnishes any labor or furnishes any materials for the improvement or erection of any building or other structure upon lands, or in making any other improvements thereon, under a contract with the owner of the land or with his agent, contractor, or subcontractor, or with the consent of the owner, upon complying with the provisions of this chapter, shall be entitled to a lien upon such building or other structure and upon the land on which the improvements are situated, or to improve which said work was done or work or materials furnished, to secure the payment for such labor and materials."

Section 35-1204, NDRC 1943 relative to materials furnished provides as follows:

"No person furnishing materials shall be entitled to a lien under this chapter unless he shall:

"1. Keep an itemized account thereof separate and apart from all other items of account against the purchaser;

"2. Make a written demand for payment of such account at least fifteen days prior to the filing of the lien; and

"3. File with the clerk of the district court of the county in which the land, building, or improvement is situated a notice in writing signed by the

person entitled to the mechanic's lien or by his authorized agent stating:

"a. The name of the person in possession of the land;

"b. The description of the property to be charged with the lien;

"c. The date of the contract; and

"d. That the mechanic's lien against the building, improvement, or premises will be perfected according to law unless the account shall have been paid."

It will be noted that no preliminary steps, prior to the filing of a mechanic's lien for labor are required by statute.

Section 35-1208, NDRC 1943 provides as follows:

"Consent; When Implied. The owner of the property upon which the labor is performed or for which the materials are furnished shall be presumed to have consented to the performance of such labor or the furnishing of such materials if he had knowledge thereof at the time the labor was performed or the materials furnished and did not give notice to the person furnishing the same of his objections thereto."

Respondents' contention that under Section 35-1203 appellant actually had to do the manual labor personally to entitle him to a mechanic's lien for labor ignores the words, "Any person who performs or furnishes any labor". The word "furnishes" is defined in Juno v. Northland Elevator Co., 56 N.D. 223, 216 N.W. 562, 563, as follows:

"Furnish means 'to provide for; to provide what is necessary for;' to 'supply; give; afford.'"

"A contract by one to print and furnish to another illustrated advertising booklets is not a contract for particular personal services, but may be assigned; the word 'furnish' meaning to supply or

provide." H. C. Browne & Co. v. Jno. P. Sharkey Co., 58 Or. 480, 115 P. 156.

 Under a statute providing that anyone to whom a debt is due for labor "performed or furnished" in the erection, alteration, or repair of any building or structure upon any realty, by virtue of an agreement with the owner, shall have a lien on such building and land, an architect who furnished the building plans and supervised the construction, and one who supervised the purchase of material and the employment of laborers, had a lien, as they furnished "labor", for the word "furnished" is not synonymous with "performed" and the statute was not intended to protect only those working with their hands. Williamson v. Hotel Melrose, 110 S.C. 1, 96 S.E. 407.

The respondents have cited certain cases which define the word, "labor", but most of these citations do not deal with mechanic's liens for labor, and the only one relevant to the issues here is that of Morley v. McCaskey, 134 Okl. 50, 270 P. 1107, 1108, where the court construed an Oklahoma statute reading as follows:

"Laborers who perform work and labor for any person under a verbal or written contract, if unpaid for the same, shall have a lien on the production of their labor, for such work and labor; provided, that such lien shall attach only while the title to the property remains in the original owner." 42 O.S.1951 § 92.

The Oklahoma court held that the term "laborers" as used in said section is intended to designate persons without particular training who are employed at manual labor under a contract terminable at will; that is, common laborers are those who are required to use their hands or muscles in actual work. As the Oklahoma statute does not include the words, "any person who performs or furnishes any labor," the case is not in point.

■ There seems to be no question but what the appellant furnished the labor in the installation of the plumbing and heating in the dwelling on the premises involved herein, with the knowledge and consent of respondents, and that the amount of such labor was not in dispute. It would necessarily follow that appellant had a valid mechanic's lien for labor against said premises.

■ The other question for decision relates to the personal claim of appellant against respondent James E. Glock for $1,273.04, which is the amount appellant claims respondent owes him on an open account. The appellant was permitted, without objection, to offer evidence supporting the claim for plumbing and heating materials installed in the dwelling of respondents under a contract between appellant and R. H. Hillestad Co., Inc., and appellant was permitted, without objections, to show that such claim was due and owing, that no part thereof had been paid, and that the respondent, James E. Glock, had agreed to pay appellant for the same. The question presented to the trial court is whether the claimed guarantee of the respondent, James E. Glock, was a collateral promise to pay, void under Section 9–0604, NDRC 1943, or whether it was an original promise to pay, for which appellant was entitled to a judgment against respondent James E. Glock. Without objection this question was submitted to the trial court, who decided that the claimed promise to pay was void under said Section 9–0604. For the first time, in this appeal, respondents challenge the right of the court to pass upon the question of whether such personal claim for money judgment was proper in an action to quiet title. "Where an issue is neither raised nor considered in the trial court it cannot thereafter be raised for the first time on appeal." McDonald v. Abraham, 75 N.D. 457, 28 N.W.2d 582, 583.

The testimony of the appellant, in substance, was that he had a verbal contract with R. H. Hillestad Co., Inc., to furnish the labor and material for the installation of plumbing and heating in the home of the respondents; that after he had run the outside water and sewer lines to the dwelling and had not received any payment he had a conversation with the respondent, James E. Glock, in which he stated that he had not received any payment for labor or material and that he was now through with the work until "further money comes", and that M. Block stated that they had money down at First Federal which was supposed to go to Ray Hillestad and he would see to it that the money was paid out of the balance. As to the further conversation on that occasion, the following is the testimony:

"Q. Now, was there anything else said at that time and place—A. No.

"Q. Relative to completing the plumbing and heating in the Glock house? A. Well, he said, 'So if the rat isn't going to pay me he will, Mr. Glock will.' "

Two other witnesses testified on behalf of the appellant regarding this conversation and there is a slight discrepancy between the appellant's testimony and that of one of his witnesses in this regard:

"Q. Now, just in substance what was said at that time and who said it? A. Well, I noticed that we were going to leave the place and that's when Tony and Glock started talking together, and he says that we are going to leave because he don't get any money.

"Q. Who said that? A. Tony did.

"Q. All right, What did Mr. Glock say? A. He says, 'Well,' he says, he would like to move in before Christmas if we couldn't go ahead and finish it and if Hillestad don't pay him he will."

The respondent, James E. Glock, testified in substance that he did not recall any such conversations as were related by appellant and his witnesses.

Section 9–0604, NDRC 1943, so far as relevant here, provides as follows:

"Contracts Invalid Unless in Writing: Statute of Frauds. The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. * * *

"2. A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 22–0105;

"3. * * *

"4. * * *"

Section 22–0105, NDRC 1943, referred to in Section 9–0604, NDRC 1943, so far as applicable here, provides as follows:

"When a Guaranty Need Not Be in Writing. A promise to answer for the obligation of another in any of the following cases is deemed as original obligation of the promisor and need not be in writing:

"1. When the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise, or by one who has received a discharge from an obligation in whole or in part in consideration of such promise;

"2. When the creditor parts with value or enters into an obligation in consideration of the obligation in respect to which the promise is made, in terms or under circumstances which render the party making the promise the principal debtor and the person in whose behalf it is made his surety;

"3. When the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it shall cancel the antecedent obligation and accept the new

promise as a substitute therefor, or upon the consideration that the party receiving it shall release the property of another from a levy under an execution on a judgment obtained upon the antecedent obligation, or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person;

"4. * * *

"5. * * *"

The question for determination is whether the language attributed to the respondent, James E. Glock, is sufficient to bring the contract within the exception set forth in paragraph 2 of said Section 22–0105, NDRC 1943.

In the Restatement of the Law of Contracts, Sec. 184, prevailing law is thus stated: "Where the consideration for a promise that all or part of a previously existing duty of a third person to the promisee shall be satisfied is in fact or apparently desired by the promisor mainly for his own pecuniary or business advantage, rather than in order to benefit the third person, the promise is not within Class II of Section 178, (contracts with an obligee to answer to him for the debt, default or miscarriage of his obligor) unless the consideration is merely a premium for the promisor's insurance that the duty shall be discharged." This illustration is given: "D contracts with S to build a house for S. C contracts with D to furnish materials for the purpose. D, in violation of his contract with C, fails to pay C for some of the materials furnished. C justifiably refuses to furnish further materials. S orally promises C, that if C will continue to furnish D with materials that C had previously agreed to furnish, S will pay the price not only for the materials already furnished but also for the remaining materials if D fails to do so. S's promise is enforceable."

■ It can only be concluded that the respondent, James E. Glock, had a purpose of his own in keeping up the supply of plumbing material to the job and of seeing that it was installed, as the testimony shows that he desired to have his home ready for occupancy by Christmas.

■ Where the promise is to subserve some interest or purpose of the promisor, notwithstanding the effect is to pay or discharge the debt of another, the promise is not within the statute of frauds. Kampman v. Pittsburgh Contracting & Engraving Co., 316 Pa. 502, 175 A. 396, 398. Quoting further from the above case:

"It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute."

■ The testimony is not clear as to the value of the materials furnished by the appellant after the contract with the respondent, James E. Glock.

The judgment of the district court relative to the mechanic's lien for labor is reversed. The other question presented as to whether the contract was within the statute of frauds is remanded to the district court with instructions to permit additional testimony to be presented on the question of the value of the materials furnished by appellant to respondent, James E. Glock, after the contract referred to, after which the district court will make further findings and cause the additional record to be settled, certified and returned to this court with the record that is now remanded.

GRIMSON, C. J., and MORRIS, SATHRE and BURKE, JJ., concur.

JOHNSON, J., deeming himself disqualified, did not participate.