**Irene NELSON, Plaintiff/Appellee,**

v.

**TMH INC., a North Dakota Corporation; Marlin T. Tannehill, individually and as an officer and director of TMH, Inc.; and Helen Mize, individually and as an officer and director of TMH, Inc., Defendants,**

**and**

**Clifford J. Hurich, individually and as officer and director of TMH, Inc., a corporation, Defendant/Appellant.**

Civ. No. 9689.

Supreme Court of North Dakota.

April 30, 1980.

Rehearing Denied May 15, 1980.

Vince H. Ficek, Dickinson, and Dale W. Moench, Irving, Tex., for plaintiff/appellee; argued by Mr. Moench.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant/appellant; argued by Gordon W. Schnell, Dickinson.

PAULSON, Justice.

Clifford J. Hurich, a/k/a Clifford J. Hurrich ["Hurich"], appeals from a judgment of the Stark County District Court. The district court found Hurich and TMH, Inc. ["TMH"] jointly and severally liable to Irene Nelson ["Irene"] for the unpaid balance of a loan made by Irene to TMH, Inc. We affirm.

TMH, Inc., is a North Dakota corporation formed by the defendants Hurich, Marlin T. Tannehill, and Helen Mize for the purpose of the production and sale of the Dial-N-Wash detergent dispenser. The Dial-N-Wash is a plastic dispenser designed to hold a 3½ pound box of laundry detergent. The dispenser hangs on the wall and dispenses a plastic cup of detergent when the dial at the bottom is turned. The Dial-N-Wash was invented by Marlin T. Tannehill.

The plaintiff, Irene Nelson, was an acquaintance of Tannehill's and knew that Tannehill was in need of money to develop and patent his invention. In early 1976, Irene, whose last name at that time was Kadrmas, told Hurich about Tannehill's invention. When Hurich showed an interest in the patenting and marketing of the Dial-N-Wash, Irene introduced Hurich to Tannehill.

Hurich and Tannehill decided to form a corporation for the production and marketing of the Dial-N-Wash dispenser. On July 12 and 13, 1976, the articles of incorporation of TMH, Inc., were drawn up and TMH was incorporated. The incorporators were Tannehill, Helen Mize (Tannehill's sister), and Hurich. Hurich invested $25,000 and he obtained 24,500 shares of stock. Mize invested $1,133 and obtained 1000 shares of stock. Tannehill received 24,500 shares for his invention and the work which he had performed on the invention and on the patent application. The name "TMH" is a combination of the first initials of the last names of each of the three incorporators, namely, those of Tannehill, Mize, and Hurich.

Hurich and Irene Kadrmas Nelson were long-time friends, Hurich having been a friend of Irene's ex-husband, Maynard Kadrmas, as well as a friend of the parents of both Maynard and Irene. Irene trusted Hurich and depended upon him for advice and counsel in business matters. During the time between Irene's divorce from Maynard Kadrmas in February of 1974 and her later marriage to Herbert Nelson in February of 1978, she became extremely close to Hurich. Hurich visited Irene frequently, they became romantically involved, and he asked her to marry him. Irene testified that although she felt very close to Hurich, she did not want to marry him.

In February of 1977, Hurich had $8,000 in loans to TMH outstanding, as well as his capital investment of $25,000 in the corporation. He also owned 640 acres of unencumbered farm land; $40,000 in checking account, savings, and cash value of his life insurance; unencumbered grain, farm machinery, and equipment. Because of unexpected costs, TMH was short of funds in January and February of 1977. Hurich falsely informed Irene that he was short of cash and persuaded her to make a loan to the corporation.

Irene mortgaged her home to Metropolitan Savings and Loan Association of Dickinson, North Dakota for $30,600, at an interest rate of 9½ percent. The purpose of her borrowing the money was so that she could make a loan to TMH. Although her house was sufficient collateral for the loan, the bank required a cosigner because the bank believed her income was insufficient to allow for the $334 monthly payment on the loan. The $334 monthly payment represents principal and interest, an escrow for taxes, insurance, disability insurance, and mortgage insurance. Hurich cosigned for the loan.

On February 7, 1977, Irene loaned $29,600 to TMH, which came out of the proceeds of the loan which she obtained from Metropolitan and which loan Hurich cosigned. Hurich assured Irene that he would repay the loan if the corporation was unable to do so and that she should not worry about it. Shortly after TMH received the loan money from Irene, Hurich was repaid $3,000 on a loan he had made to TMH prior to the time that Irene obtained the loan from Metropolitan.

The terms of the loan that Irene made to TMH were never set out in writing. Irene testified that she asked "continually" for papers to be drawn up evidencing her loan to TMH. They never were executed. It is clear from the record that Irene was making a loan to the corporation and was not

interested in investing as a stockholder. After Irene loaned $29,600 to the corporation, she still had possession of the $1,000 remaining from the $30,600 she had borrowed from Metropolitan. She loaned $300 of the remaining $1,000 to Tannehill. She also was required to pay $645 as closing costs to Metropolitan. TMH later reimbursed Irene for the $645 closing costs.

The trial court found that the terms of the two loans were identical; that is, that the payment of $334 which Irene made monthly to Metropolitan was the same amount as TMH was required to pay Irene as part of their unwritten agreement. Counsel for Hurich has vigorously argued that the terms cannot possibly be the same because Irene borrowed $30,600 from Metropolitan and TMH borrowed only $29,600 from Irene. Counsel also argues that Irene's loan was to be repaid at $267.36 per month, which represents the amount of principal and interest due Metropolitan from Irene. Essentially, counsel is asking us to disregard the various other costs Irene incurred in obtaining the loan.

■ Our standard of review in this case is provided by Rule 52(a) of the North Dakota Rules of Civil Procedure. Under Rule 52(a), we will not overturn a finding of fact of a trial court unless that finding is clearly erroneous and we are left with a firm and definite conviction that a mistake has been made. *Fries v. Fries*, 288 N.W.2d 77, 79 (N.D.1980). We do not believe that the finding of the trial court that the terms of the two loans were the same is clearly erroneous. Several factors in the record support our conclusion. It is undisputed that Irene's monthly payments to Metropolitan were $334.00. The record indicates that TMH made seven payments in monthly installments of $334 to Irene before it defaulted on the loan. Upon default of TMH, Hurich made nine payments to Irene, five of $334, three of $313, and one of $300. TMH has admitted that it borrowed $29,600 from Irene at 9½ percent interest. There is no writing evidencing that the terms of the two loans are identical, but the overwhelming weight of the evidence indicates that they are. Monthly installment payments of $334 were made on both loans. TMH conceded that the interest rate was 9½ percent. We believe that the $1,000 difference in the total amount of the loans is meant to be the consideration Irene received for mortgaging her house. If this were not so, there would have been absolutely no benefit to Irene for making a loan to TMH. $1,000 is a small consideration for a woman to encumber her house with a mortgage, yet counsel for Hurich has asked us to take the position that Irene in effect made the loan for no consideration at all. We cannot do so.

The principal issue in this case involves the liability of Hurich to Irene Nelson for the debt incurred by TMH. TMH has admitted its indebtedness and is not a party to this appeal. The trial court found Hurich jointly and severally liable because he personally guaranteed the loan which Irene made to the corporation. The record supports the finding that Hurich assured Irene that she would not have to worry about repayment of the loan; that Hurich was the person who induced Irene to mortgage her house and loan the money to the corporation; and that Irene would be reimbursed by Hurich if the corporation was unable to do so.

■ Hurich has raised the statute of frauds as a defense.[1] Section 31–11–05,

---

1. The portions of the statute of frauds relevant to this case are set out in the following North Dakota statutes: §§ 9–06–04(2), 22–01–04, and 22–01–05 of the North Dakota Century Code:

    "*9–06–04. Contracts invalid unless in writing—Statute of frauds.*—The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

    .    .    .    .    .

    "2. A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 22–01–05;   .   .   ."

    "*22–01–04. Guaranty to be in writing—Exception—Consideration need not be expressed.*—Except when a guaranty is deemed an original obligation as provided in section 22–01–05, a guaranty must be in writing and signed by the guarantor, but the writing need not express a consideration."

N.D.C.C., sets forth certain maxims of jurisprudence, two of which apply here, *i. e.*, subsections 11 and 14 of § 31–11–05:

> "*31–11–05. Maxims of jurisprudence—How to be used and applied—List.*—The maxims of jurisprudence set forth in this section are not intended to qualify any of the provisions of the laws of this state, but to aid in their just application:
>
> .    .    .    .    .
>
> "11. No one should suffer by the act of another.
>
> .    .    .    .    .
>
> "14. For every wrong there is a remedy. . . ."

To these we add the equitable maxim that "equity abhors a forfeiture". In *State Bank of Towner, Inc. v. Rauh*, 288 N.W.2d 299, 307 (N.D.1980), we quoted *Beck v. Lind*, 235 N.W.2d 239, 246 (N.D.1975), with approval for the proposition that "A rule of law in any event should not be applied so as to benefit the principal perpetrator of the violation". To this we add that the statute of frauds should not be allowed to be used to perpetrate a fraud or to promote an injustice.[2]

Although we are unable to bring the factual situation of this case within the exceptions to the statute of frauds set out in § 22–01–05, N.D.C.C., we believe that it would promote an injustice if we were to allow Hurich to invoke the protections of the statute of frauds in the instant case.[3] Also, we believe that the common law exception to the statute of frauds involving direct personal benefits to corporate directors as well as the common law exception to the statute of frauds covering situations where the leading object of the promisor is to subserve some interest of his own are applicable here.

In *Glock v. Hillestad*, 85 N.W.2d 568, 575 (N.D.1957), this court quoted with approval from the case of *Kampman v. Pittsburgh Contracting & Engraving Co.*, 316 Pa. 502, 175 A. 396, 398 (1934). The Pennsylvania Court stated therein that:

> ". . . when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute."

We recently found an oral promise to be an exception to the statute of frauds in *State Bank of Towner, Inc. v. Rauh, supra*. In *Rauh*, we found that an oral guarantee was enforceable because it was made to sub-

---

"22–01–05. *When a guaranty need not be in writing.*—A promise to answer for the obligation of another in any of the following cases is deemed an original obligation of the promisor and need not be in writing:
"1. When the promise is made by one who has received property of another upon an undertaking to apply it pursuant to such promise, or by one who has received a discharge from an obligation in whole or in part in consideration of such promise.
"2. When the creditor parts with value or enters into an obligation in consideration of the obligation in respect to which the promise is made, in terms or under circumstances which render the party making the promise the principal debtor and the person in whose behalf it is made his surety.
"3. When the promise, being for an antecedent obligation of another, is made upon the consideration that the party receiving it shall cancel the antecedent obligation and accept the new promise as a substitute therefor, or upon the consideration that the party receiving it shall release the property of another from a levy under an execution on a judg-

ment obtained upon the antecedent obligation, or upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person.
"4. When a factor undertakes, for a commission, to sell merchandise and guarantee the sale.
"5. When the holder of an instrument for the payment of money upon which a third person is or may become liable to him transfers the instrument in payment of a precedent debt of his, or for a new consideration, and in connection with such transfer, enters into a promise respecting such instrument."

2. *See Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 812 (N.D.1976).

3. *See Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659, 686 (N.D.1966), where this court said that fraud can be inferred from the facts and circumstances of a particular case.

serve some interest of the promisor. *Rauh, supra*, 288 N.W.2d at 308.

We conclude that Hurich is liable is Irene Nelson on the oral guarantee which he made to her regarding the loan which she made to TMH. The record reveals that Hurich gave several assurances to Irene that she would be fully compensated on the loan and that he would see to it that she was repaid. Hurich was in a position of trust with Irene at a time when Irene was in an emotionally weakened state. Hurich induced her to make the loan to TMH under the false pretense that he was financially unable to do so himself. He even went so far as to cosign for the loan which Irene secured from Metropolitan because Irene was unable to borrow the money without a cosigner. Hurich and TMH repeatedly refused to comply with Irene's requests that papers be drawn up containing the terms of the loan which she made to TMH. Hurich cannot now invoke the protections of the statute of frauds after he scrupulously avoided reducing the terms of their agreement to writing.

We also conclude that Hurich received a direct personal benefit from the loan which he induced Irene to make to TMH. Shortly after Irene paid the $29,600 to TMH, Hurich was reimbursed on a $3,000 loan which he had made to TMH previously. It is a general rule of law that a promise by an officer, director, or stockholder of a corporation to be responsible for the repayment of a loan to the corporation, made as an inducement to the promisee to make the loan or advancement, is an original promise and one not within the statute of frauds. 35 A.L.R.2d 906, 930 (1954). Where the promisor receives a direct personal benefit as a result of the promise, the promise is outside the statute of frauds. Hurich received such a benefit.

As we have previously indicated, Hurich began to make the payments on the loan to Irene after TMH became unable to do so. Hurich stopped making the payments only after Irene became romantically involved with Herbert Nelson and ended her romantic involvement with Hurich. His actions in doing so are evidence of the fact that the terms of his oral agreement with Irene are that he would make the payments if TMH could not. His course of conduct in making the payments also provides evidence of the fact that the terms of his oral agreement with Irene are the same as the terms of the note which Irene signed with Metropolitan and which Hurich cosigned. If this court could take all the evidence in the record and boil it down to a few words, it seems that TMH and Hurich told Irene in effect "Mortgage your house, loan us the money, keep a thousand dollars for yourself, and don't worry about repayment, because we will take care of it".

Hurich has also argued with the trial court's finding that the acceleration clause in the oral agreement was the same as the acceleration clause in the promissory note given to Metropolitan. We agree with the trial court that the two acceleration clauses are the same because we believe that all of the key terms of the Metropolitan agreement were incorporated into the oral agreement.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.