# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 38

James B. Lund,                                    Plaintiff and Appellant

v.

Leland A. Swanson and
Open Road Trucking, LLC,                          Defendants and Appellees

## No. 20200147

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John Charles Irby, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Sean T. Foss (argued) and Sarah A. Aaberg (on brief), Fargo, ND, for plaintiff and appellant.

Bruce A. Schoenwald (argued) and Randolph E. Stefanson (on brief), Moorhead, MN, for defendants and appellees.

# Lund v. Swanson
## No. 20200147

**VandeWalle, Justice.**

[¶1]   James Lund appealed from a judgment entered after the district court granted summary judgment in favor of Leland Swanson and Open Road Trucking, LLC ("Open Road"). Lund argues the district court erred in concluding the statute of frauds barred enforcement of the parties' settlement agreement. We affirm, concluding the alleged settlement agreement is invalid under the statute of frauds.

I

[¶2]   Lund and Swanson co-own multiple business entities, including:

(a) Fargo Cargo, LLC and Fargo Logistics, LLC (collectively "Fargo Cargo"), which operated over-the-road trucking and logistics companies;

(b) Combined Asset Management, LLC (hereinafter "CAM"), which owned real property in North Dakota and Florida;

(c) SBC Building Systems, LLC ("SBC"), which manufactured steel buildings; and

(d) Wedak, LLC ("Wedak"), which owns and operates real estate developments in North Dakota.

Open Road is a limited liability company with its principal address in Fargo, North Dakota.

[¶3]   Lund has been an adverse party to Swanson and Open Road in a series of lawsuits, dating back to 2018. Trial in one of the lawsuits was scheduled to begin December 3, 2019. On the day before trial, December 2, 2019, Lund, Swanson, Open Road, and their respective counsel met to discuss settling the lawsuits between them. Swanson and Open Road are represented by the same attorneys.

1

[¶4]   After the meeting, Lund's attorney, Sean Foss, contacted the district court to inform it that the parties had resolved the matter scheduled for trial the following day, and asked the court to "take the trial off the calendar." Attorney Foss then sent an email to counsel for Swanson and Open Road, with the subject line "settlement," containing his notes regarding the settlement terms, which included:

> 1. CAM – All CAM properties transferred to Lee (or his assignee) except Jim gets CAM oil interests and one-half of Moorhead net sales proceeds.
>
> 2. WeDak – Lee will transfer one-half of his membership interest (i.e. 20% of the 40% he currently owns) to Jim. Parties intend to develop open lots in the Ray, ND development owned by Wedak, with Lee financing the purchase and placement of mobile homes on those lots.
>
> 3. Formal dissolution / termination of the other LLC's owned between the two of them (Fargo Cargo, Fargo Logistics, SBC).
>
> 4. Dismissal of the pending lawsuits – Fargo Cargo, CAM, Western State Bank, ORT – Cass County, ORT – Becker County.
>
> 5. Global release of all claims.

On December 10, 2019, Swanson and Open Road's attorney, Randolph Stefanson, emailed Foss a proposed settlement agreement, which included the same terms as Foss's email. Two days later, Foss emailed Swanson and Open Road's attorneys a revised version of the proposed settlement agreement.

[¶5]   On that same day, December 12, 2019, this Court issued an opinion in one of the parties' pending cases, which was on appeal at the time. *See Open Road Trucking, LLC v. Swanson*, 2019 ND 295, 936 N.W.2d 72. In that case, we concluded a "judgment was not satisfied as between Swanson and Lund, and Open Road was entitled to take an assignment of the judgment from Swanson to enforce Swanson's right of contribution from Lund for one-half of the judgment amount." *Id.* at ¶ 26. We reversed the district court's order directing entry of satisfaction of the judgment, and remanded for entry of a

charging order against Lund's transferrable interests in specified limited liability companies. *Id.* at ¶ 27.

[¶6]   Ultimately, no written settlement agreement was signed by the parties. In January 2020, Lund initiated this action against Swanson and Open Road to enforce the alleged settlement agreement. The parties filed cross-motions for summary judgment. After a hearing, the district court denied Lund's motion and granted summary judgment in favor of Swanson and Open Road, concluding the statute of frauds barred enforcement of the settlement agreement. Lund appealed.

## II

[¶7]   Our standard of review for summary judgments is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*McDougall v. AgCountry Farm Credit Services, PCA*, 2020 ND 6, ¶ 10, 937 N.W.2d 546.

3

# III

[¶8]  Lund argues: (i) the statute of frauds does not apply to the parties' settlement agreement; (ii) even if the statute of frauds applies, the parties' writings satisfied the statute; (iii) the parties' partial performance of the settlement agreement removed the agreement from the statute of frauds; and (iv) application of the statute of frauds would promote an injustice.

## A

[¶9]  A settlement agreement is a contract between parties, and thus contract law applies. *See Kuperus v. Willson*, 2006 ND 12, ¶ 11, 709 N.W.2d 726. Subsection 9-06-04(3), N.D.C.C., provides in relevant part:

> The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by the party's agent:
>
>     . . . .
>
> 3.  An agreement . . . for the sale, of real property, or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged.

[¶10] The district court determined the statute of frauds applied to the parties' alleged settlement agreement because the terms being negotiated included "interests in real property."[1] The court concluded that at the December 2, 2019, settlement meeting the parties "verbally agreed to reach settlement along the following terms: . . . CAM would transfer all of its real estate properties to Defendant Swanson except Plaintiff Lund would receive CAM's oil and gas interests and one-half of the net sale proceeds from the pending sale of a residence in Moorhead." After the meeting, Lund's attorney emailed Swanson and Open Road's attorneys his notes, providing: "All CAM properties

---

[1] The district court also concluded the statute of frauds applied because the agreement included "debt forgiveness." *See* N.D.C.C. § 9-06-04(5).

4

transferred to [Swanson] except [Lund] gets CAM oil interests and one-half of Moorhead net sales proceeds." The subsequent proposed settlement agreement provides: "All of Lund's member interest in CAM shall be transferred to Swanson with the exception of CAM's oil interests and one-half of the net proceeds in a Moorhead, MN residence currently under contract of sale which shall be conveyed to Lund." Because of the inclusion of oil interests, the alleged settlement agreement included real property interests under N.D.C.C. § 9-06-04(3). *See Rasnic v. ConocoPhillips Co.*, 2014 ND 181, ¶ 10, 854 N.W.2d 659 ("A mineral interest is a real property interest.").

[¶11] Lund argues in his reply brief that N.D.C.C. § 9-06-04(3) applies only to the *sale* of real property, not the *transfer* of real property. He contends the settlement agreement "did not contemplate the formal 'sale' of real property and instead negotiated the transfer of real property as part of the settlement." Lund does not provide the meaning of "sale" as it appears in subsection 3, nor does he cite any authority supporting such a narrow interpretation of the statute of frauds.

[¶12] "The general rule is that contracts for the sale of real property and *transfers* of real property interests must be made by an instrument in writing." *Williston Co-op. Credit Union v. Fossum*, 459 N.W.2d 548, 551 (N.D. 1990) (emphasis added) (citing N.D.C.C. §§ 9-06-04, 47-10-01). Section 47-10-01, N.D.C.C., provides in relevant part, "An estate in real property . . . can be *transferred* only by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by the party's agent thereunto authorized by writing." (Emphasis added.) Thus, section 47-10-01 would seem to defeat Lund's argument. However, it is unclear whether Lund is arguing the settlement agreement actually transferred the real property or if it was an agreement to transfer the property, contemplating the execution of a deed. To the extent Lund argues the settlement agreement is not the instrument of transfer but merely an agreement to transfer the real property in the future through a deed, which would presumably satisfy N.D.C.C. § 47-10-01, we must review whether the agreement was for the sale of real property under N.D.C.C. § 9-06-04(3).

[¶13] Issues regarding interpretation and application of statutes are questions of law and are fully reviewable on appeal. *Johnston Land Co., LLC v. Sorenson*, 2018 ND 183, ¶ 10, 915 N.W.2d 664. Our standards for interpreting a statute are well established:

> Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of the statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it [is] susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

*Riemers v. Jaeger*, 2018 ND 192, ¶ 11, 916 N.W.2d 113 (citations omitted). Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02.

[¶14] The word "sale" as it appears in N.D.C.C. § 9-06-04(3) is not defined by statute. "When the meaning of a word in a statute is doubtful, it is appropriate to refer to related legislation to determine the sense in which the word was employed in the particular statute." *Coldwell Banker-First Realty, Inc. v. Meide & Sons, Inc.*, 422 N.W.2d 375, 380 (N.D. 1988) (citing *Grabow v. Bergeth*, 229 N.W. 282, Syl. 3 (N.D. 1930)). The Uniform Commercial Code—Sales (ch. 41-02) provides a definition of "sale" as applies to that chapter: "'Sale' consists in the passing of title from the seller to the buyer for a price." N.D.C.C. § 41-02-06(1)(d).

[¶15] What is now N.D.C.C. § 9-06-04(3) has been a part of the territorial and state law since 1877. *See* Revised Codes of the Territory of Dakota, Civil Code § 920 (1877); *Petroleum Exchange v. Poynter*, 64 N.W.2d 718, 726 (N.D. 1954).

The 1877 Civil Code defined "sale," but in a different "part"[2] than subsection 3.[3] The Civil Code § 981 defined "sale" as "a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property." The first edition of Black's Law Dictionary defined "price" as "[t]he consideration (usually in money) given for the purchase of a thing." Black's Law Dictionary 935 (1st ed. 1891). The annotation to the definition states:

> It is true that "price" generally means the sum of money which an article is sold for; but this is simply because property is generally sold for money, not because the word has necessarily such a restricted meaning. Among writers on political economy, who use terms with philosophical accuracy, the word "price" is not always or even generally used as denoting the moneyed equivalent of property sold. They generally treat and regard price as the equivalent or compensation, in whatever form received, for property sold. The Latin word from which "price" is derived sometimes means "reward," "value," "estimation," "equivalent."

*Id.* Bouvier's Law Dictionary defined "price" as "[t]he consideration in money given for the purchase of a thing" and noted:

> The third quality of a price is that it consists in money, to be paid down, or at a future time; for if it be of any thing else it will no longer be a price, nor the contract a sale, but exchange or barter.

Bouvier, *A Law Dictionary* 457 (15th ed. 1883). Both dictionaries defined "pecuniary" similarly, as relating to money. *Id.* at 397; Black's Law Dictionary, at 882. Because the definition of "price" varied as to whether the consideration given for the purchase of a thing needed to be in money, the dictionary definition of "price" is not helpful in resolving the question of whether the settlement agreement included the sale of real property.

---

[2] The Revised Codes of the Territory of Dakota (1877) were divided by: code, division, part, title, chapter, article, section.

[3] Both appeared in Division Third (titled "Obligations") of the Civil Code, but subsection 3 was in part 2 ("Contracts"), whereas the sale definition was in part 4 ("Obligations arising from particular transactions").

[¶16] Our case law, however, demonstrates we have broadly construed subsection 3. *See Jones v. Barnett,* 2000 ND 207, ¶ 13, 619 N.W.2d 490 (holding alleged verbal agreements that grantor would retain property interest in the form of "wandering rights" and in prohibiting the sale of the land, made in consideration of conveyance of grantor's one-half interest in the land, were invalid under the statute of frauds); *Mertz v. Arendt*, 1997 ND 113, ¶ 8, 564 N.W.2d 294 (parol gift of real property brought outside of statute of frauds through partial performance); *Hagen v. Schluchter*, 126 N.W.2d 899, 902 (N.D. 1964) ("An agreement to devise real property is in effect a contract to sell real estate and is included within the scope of subsection 4 [now subsection 3]."); *Heuer v. Heuer*, 253 N.W. 856, 859 (N.D. 1934) (stating that "[t]here is no good reason why a gift should not be subject to the same rules as a sale, and the cases so hold" in applying the part performance exception to the statute of frauds).

[¶17] California has a nearly identical statute of frauds provision to subsection 3.[4] *See* Cal. Civ. Code § 1624(a)(3). It has also broadly construed its statute of frauds' provision on agreements for the sale of real property. *See Anson v. Townsend*, 15 P. 49, 50 (Cal. 1887) (stating "parol gifts will be enforced under like circumstances and conditions as parol sales" in voiding the gift of real property under the statute of frauds); *Denio v. Brennecke*, 45 P.2d 229, 231 (Cal. Dist. Ct. App. 1935) (concluding oral agreement to transfer oil rights for legal services came within the statute of frauds' provision governing agreements for the sale of real property); *Keeler v. Murphy*, 3 P.2d 950, 952 (Cal. Dist. Ct. App. 1931) ("Almost universally where the question has arisen it has been held that an exchange is a purchase or sale within the meaning of the statute of frauds. Thus an exchange of real property for personal property is within the statute covering sales of real property."). Other jurisdictions have similarly construed "sale" to mean more than land exchanged for money. *See, e.g.*, *Waddle v. Elrod*, 367 S.W.3d 217, 224 (Tenn. 2012) (stating that in

---

[4] California's provision has remained the same since 1874, minus grammatical changes. *See* 1873-74 Cal. Stat. Am. 241-42. "California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.'" *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 476 n.4 (N.D. 1986).

Tennessee's statute of frauds "[t]he word 'sale,' used in the statutory phrase 'contract for the sale of lands, tenements, or hereditaments,' has long been broadly interpreted to mean any alienation of real property, including even a donation of realty"); *Beckmann v. Mepham*, 70 S.W. 1094, 1095 (Mo. Ct. App. 1902) ("A contract for the exchange of land for land or for other things than money has been held to fall within the statute of frauds (Rev. St. 1899, § 3418), because within the reason and spirit of the language thereof as a sale of land.").

[¶18] We hold that an agreement to transfer oil interests for valuable consideration is an agreement for the sale of real property, or of an interest therein, under N.D.C.C. § 9-06-04(3). Our case law demonstrates such, California's (and other jurisdictions') case law is persuasive on the issue, and to hold otherwise would lead to an absurd or ludicrous result or unjust consequences. Accordingly, the statute of frauds applies to the alleged settlement agreement.

B

[¶19] Lund contends that even if the statute of frauds applied, such was satisfied by a signed writing. Specifically, Lund claims the writing requirement was satisfied by Stefanson's December 10, 2019 email, which included the proposed settlement agreement as an email attachment, and the signing requirement was satisfied by Stefanson's signature block included at the end of the email. Lund asserts Stefanson had express authority from his clients to enter into the settlement agreement as evidenced by their presence at the December 2, 2019 settlement meeting.

[¶20] Subsection 9-06-04(3), N.D.C.C., provides that an agreement for the sale of real property, "if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing subscribed by the party sought to be charged." *See also Tostenson v. Ihland*, 147 N.W.2d 104, 111 (N.D. 1966) (applying to an attorney-agent). Thus, under subsection 3, Swanson and Open Road needed to sign a writing granting authority to Stefanson to execute the agreement on their behalf. Assuming that a signature block on an email could in some circumstances constitute a signature on an attached document

9

rather than only a signature on the body of the email, and Lund has cited no authority for that proposition, Lund has failed to identify any evidence in the record of a signed writing authorizing Stefanson to execute the agreement. Because the statute of frauds was not satisfied by a signed writing, the alleged settlement agreement is invalid.

C

[¶21] Lund contends the parties' partial performance of the settlement removed the agreement from the statute of frauds. Lund claims the parties partially performed upon their agreement to dismiss the pending lawsuits between them when Foss emailed the district court to inform it the parties had resolved the matter, to ask it to take the trial scheduled for the next day off the calendar, and to request fourteen days to submit closing documents.

[¶22] In the absence of a written agreement, a court may "compel the specific performance of any agreement for the sale of real property in case of part performance thereof." N.D.C.C. § 47-10-01. "To take a contract out of the statute of frauds, the party seeking to enforce the oral contract must establish part performance that is not only consistent with, but that is consistent *only* with, the existence of the alleged oral contract." *Kohanowski v. Burkhardt*, 2012 ND 199, ¶ 16, 821 N.W.2d 740. "Cases accepting the doctrine of part performance have recognized three major categories of acts by the purchaser that may make an oral contract enforceable: paying the contract price, taking possession of the property, and making improvements." *Johnson Farms v. McEnroe*, 1997 ND 179, ¶ 18, 568 N.W.2d 920.

[¶23] Lund does not argue that he performed any of the actions that we have recognized as part performance of an oral contract for the sale of real property, such as paying the contract price, taking possession of the property, or making improvements. Instead, he argues he partially performed upon the agreement to dismiss the pending lawsuits by emailing the district court to request the pending trial be removed from the court's calendar. Lund does not cite any authority that has applied the part performance of an oral sale of real property to any actions outside of the three major categories, or provide any reason to

10

expand the doctrine. Further, Lund has not demonstrated that the act of emailing the court to request the pending trial be removed from the calendar is consistent only with the existence of the alleged oral contract. Such an act is consistent with both having an agreement in place and an agreement to agree, without all of the essential terms agreed upon. *See Tarver v. Tarver*, 2019 ND 189, ¶ 9, 931 N.W.2d 187 (agreement to agree with uncertain terms is unenforceable). Accordingly, we conclude the part performance exception to the statute of frauds does not apply.

D

[¶24] Lund argues that allowing Swanson and Open Road to rely on the statute of frauds as a defense would promote an injustice. He contends that after the parties had an agreement in place, Swanson and Open Road lost interest in settling once this Court ruled in their favor in *Open Road Trucking*, 2019 ND 295.

[¶25] "The purpose and intent of the statute of frauds is to prevent fraud and perjury, and the statute should not be used as a defense where the effect would be to accomplish a fraud or to enable a party to enrich himself unjustly at the expense of another." *Wilhelm v. Berger*, 297 N.W.2d 776, 779 (N.D. 1980). In *Nelson v. TMH, Inc.*, the plaintiff sued a corporation and an incorporator of the corporation for the unpaid balance of a loan made by the plaintiff to the corporation. 292 N.W.2d 580, 581. The incorporator induced the plaintiff, with whom he was in a position of trust, to make the loan to the corporation under the false pretense that he was financially unable to do so himself. *Id.* at 585. The incorporator assured the plaintiff that she would be fully compensated on the loan and that he would see to it that she was repaid. *Id.* The corporation and the incorporator repeatedly refused to comply with the plaintiff's requests that papers be drawn up containing the terms of the loan. *Id.* The incorporator raised the statute of frauds as a defense to avoid repayment of the loan. *Id.* at 583. The Court concluded that the incorporator could not invoke the protections of the statute of frauds under such circumstances. *Id.* at 585.

11

[¶26] Lund does not argue that he detrimentally relied on the alleged settlement agreement, or that Swanson or Open Road were unjustly enriched as a result of the non-performance of the alleged agreement. He claims that he missed out on the benefit of the bargain. Such an argument, if accepted, would render the statute of frauds meaningless. This case is unlike *Nelson*, where fraud and injustice were apparent from the circumstances. Because a statute of frauds defense under these circumstances does not promote an injustice or perpetrate a fraud, we decline to remove this case from the statute of frauds.

IV

[¶27] We find the remaining issues and arguments raised by the parties unnecessary to our decision.

[¶28] Because the alleged settlement agreement is invalid under the statute of frauds, we affirm the judgment.

[¶29] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

12